UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO
ALBUQUERQUE DIVISION


RUBEN ROMERO,                    )  CASE NO: 1:21-CV-00544-KG-CG
                                 )
            Plaintiff,           )          CIVIL
                                 )
      vs.                        )    Las Cruces, New Mexico
                                 )
CORE CIVIC, INC, ET AL,          )    Thursday, March 10, 2022
                                 )
            Defendants.          )    (9:59 a.m. to 10:32 a.m.)


ZOOM MOTION HEARING

BEFORE THE HONORABLE CARMEN E. GARZA,
CHIEF UNITED STATES MAGISTRATE JUDGE


APPEARANCES:


For Plaintiff:            ALYSSA D. QUIJANO, ESQ.
                          Coyte Law
                          925 Luna Cir NW
                          Albuquerque, NM 87102

For Defendants:           JACOB B. LEE, ESQ.
                          KRISTINA R. ROOD, ESQ.
                          Struck Love Bojanowski & Acedo
                          3100 West Ray Rd.
                          Suite 300
                          Chandler, AZ 85226

Court Reporter:           Recorded; LCR

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 8365
                          Corpus Christi, TX 78468
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

1    **Las Cruces, New Mexico; Thursday, March 10, 2022; 9:59 a.m.**

2                    **(Zoom Videoconference)**

3                      **(Call to Order)**

4            **THE COURT:**  *Ruben Romero v. Core Civic*, 21-cv-544.

5    We're here today on Plaintiff's Motion To Compel.  In preparing

6    for this hearing I've reviewed the Motion to Compel, the

7    Amended Civil Rights Complaint, Defendants' Response to

8    Plaintiff's Motion to Compel, and Plaintiff's Reply in Support

9    of Plaintiff's Motion to Compel.

10           So, I guess the first question I have is have any of

11   the issues mentioned in Plaintiff's Reply been resolved?

12   Ms. Quijano?

13           **MS. QUIJANO:**  They have not, Your Honor.  We did

14   receive supplemental discovery yesterday, but it did not

15   produce any of the requested information.  Essentially what we

16   received was a supplemental response to our Interrogatory

17   Number 6, the names of the inmates in the pod, indicating that

18   the document containing the names was stored in a shed and has

19   been lost.

20           **THE COURT:**  Okay.  All right.  Mr. Lee?

21           **MR. LEE:**  Yeah, so what we produced yesterday, Your

22   Honor, when we first got the request for the interrogatory for

23   the inmate names, once we had met and conferred and agreed to

24   produce the inmate names we asked Core Civic, we asked the

25   facility to provide that to us.  We were informed, as we had

1   been and as was originally stated in our original response,

2   that for whatever reason those inmate rosters weren't stored

3   electronically.  That was news to me.  My understanding was

4   they usually were.  But for whatever reason at Cibola County

5   Correctional Center in the year 2018 they were not.  And not

6   just in June, but in 2018 I guess inmate rosters were not

7   stored electronically.

8           **THE COURT:**  So they weren't stored or preserved, is

9   that right?  Is that what you're saying?

10          **MR. LEE:**  Well, we didn't necessarily have a reason

11  to preserve the inmate roster.  We have preserved records

12  regarding the four inmates that were involved in the incident,

13  follow-up reports, institutional files, classifications,

14  et cetera.

15          **THE COURT:**  Okay.  Okay.

16          **MR. LEE:**  We were never requested to preserve those

17  and by the time we got the request for them we found out that

18  they -- they were never stored electronically so there was

19  nothing that could have been preserved electronically to my

20  understanding.

21          **THE COURT:**  Okay.  All right.  So we'll discuss that

22  then when we get to that one.

23          So I'm going to go ahead then and let's kind of go

24  through the -- kind of use Plaintiff's Reply.  So let me ask,

25  is Core Civic still maintaining that the Plaintiff did not

4

1    adequately meet and confer in this case?

2         **MR. LEE:**  Well, our position wasn't that Plaintiff

3    didn't adequately meet and confer at all.  As to the -- there

4    were a couple of areas where -- that we don't think meet and

5    was adequate.

6         Number one, when we had the original meet and confer

7    on the policies, Plaintiff's email to us was that once we

8    provided the table of contents and Plaintiffs provided the list

9    of policies that they thought should be produced that we would

10   then confer again on things.  Once we got that list, we

11   supplemented our responses, we produced the ones Plaintiff

12   requested that we agreed were relevant and responsive and

13   should be produced, and we maintained our objections to the

14   others.  We never got another request from Plaintiff to confer

15   as to the ones which we continued to.  That was one.

16        And then the other one as to the inmate names, we had

17   agreed to produce those, we were working to obtain that

18   information and going back and forth with the facility trying

19   to figure out, you know, if they were maybe stored somewhere

20   else that we would be able to locate them.  And so that wasn't

21   something that we were refusing to produce, we just were still

22   looking for the information.  But Plaintiff included that in

23   her motion, or in his motion, without, you know, asking again

24   what the status was, giving us an opportunity to explain.

25        And then as you saw from the email, we got an email

1    at 6:00 o'clock Arizona time the night it was going to be filed

2    asking if we opposed a motion that wasn't provided to us to

3    review and saying that it was being filed within the hour.  So

4    my response was just that if there was anything that we agreed

5    to produce and Plaintiff seemed to think our production was

6    insufficient and we haven't met and conferred on that and it

7    turns out that would have included the response to

8    Interrogatory Number 6, as well as the policies that again,

9    Plaintiff had said we would confer about further and never did.

10            **THE COURT:**  Thank you.

11            Ms. Quijano, is there anything that you want to add?

12            **MS. QUIJANO:**  Yes, Your Honor.  So the discussion on

13    the deficiency in Defendants' responses to discovery began --

14    we sent a letter in November with a deadline for asking them to

15    respond by a certain date came and went.  And we got a

16    response, eventually met and conferred, we pushed out our

17    deadline to file a motion to compel.  During that conversation

18    there were several discovery items that there was no

19    negotiation and they refused to produce in whole.  And then

20    there were a couple of items that we were -- we agreed -- they

21    agreed to produce pursuant to a protective order.  Negotiations

22    about the language of the protective order ensued.  They

23    produced a 13-page table of contents which we went through.

24    The Defendants continued to agree that they would supplement.

25    We had to push out the deadline for our motion to compel

6

1    several times.  It was three in total.

2            Eventually we asked again on January 26th if they

3    still intended to produce the names in Interrogatory Number 6,

4    which they indicated they had.  A week went by.  It was our

5    third deadline to file a motion to compel.  Negotiations to

6    that point had not been productive in producing the documents

7    and Plaintiff did make efforts to negotiate and work in good

8    faith to get these resolved and our motion did indicate that

9    they had agreed to produce them and if they did we would

10   withdraw that portion of our Motion to Compel.  They did not.

11           The interest in filing it all in one motion of course

12   is to avoid piecemeal litigation on this set of discovery and

13   try and resolve all of the issues all at once.

14           And so Plaintiff has made many efforts to negotiate

15   with the Defendants and we're still without discovery.

16   Settlement conference is set for the end of the month.  There

17   are many items, particularly the information about inmates,

18   their classifications and names, in the pod that are the only

19   witnesses to the attack, aside from those who attacked

20   Mr. Romero and Mr. Romero himself, and the circumstances

21   surrounding that attack have not been provided and Plaintiff

22   badly needs this information and therefore requested Court

23   intervention after three months of negotiating via email and

24   once via phone with the Defendants.

25           **THE COURT:**  Thank you.  Thank you.

7

1          Counsel, I do find that you have adequately met and

2   conferred.  It appears that you've been trying to resolve these

3   issues now since November.  It appears that -- was yesterday

4   the first day you became aware that there was no list of names

5   to be provided?

6          **MS. QUIJANO:**  Yes, Your Honor.  We received the

7   supplemental discovery yesterday with that response, that the

8   names was not --

9          **THE COURT:**  And that was after what appeared to be

10  promises of providing that information.  So I do find that

11  starting in November going through January, February, I think

12  that you made several attempts and information wasn't

13  forthcoming, which caused the filing of this Motion to Compel.

14  It looks like it's been about three months trying to negotiate,

15  which I think is more than reasonable to have filed this

16  motion, so….  So, let's go to the individual policies then.

17         Okay, the first one is with regard to retention of

18  records and the Defendants claim that this isn't relevant

19  because there's no allegations that Defendants failed to

20  preserve or retain any documents relevant to this case nor are

21  there any allegations of spoliation.  And I think you kind of

22  just addressed that, Mr. Lee.  Is there anything else you want

23  to say with regard to this policy?

24         **MR. LEE:**  Well, in regard to that particular one,

25  Your Honor, now that we've had a chance to review the case law

1  that provided by Plaintiff and of course now that we've

2  determined with Core Civic that we're not able to provide that

3  list of inmate names, we are willing to produce that particular

4  record.

5         Now, none of this argument or legal authority

6  supporting the claim was presented to us before filing the

7  motion.  Or even in the motion itself, this was in the Reply.

8  Now that we've had a chance to review the Reply and, like I

9  said, given the different circumstances we are willing to

10  produce that policy.

11         **THE COURT:**  And when can you produce that policy?

12         **MR. LEE:**  I believe we just received it yesterday or

13  the day before, so we should be able to get that out right

14  away.

15         **THE COURT:**  Okay.  Can you make sure that the

16  Plaintiff has that by 5:00 p.m. tomorrow?

17         **MR. LEE:**  Yes.

18         **THE COURT:**  Okay.  All right, then I don't need to

19  hear from you on this, Ms. Quijano, because it will be provided

20  to you.

21         So the next policy then is the Audits, Inspections,

22  and Corrective Actions.  That's Policy 01-22.  Again, the

23  Defendants are claiming that this isn't relevant in that Core

24  Civic did not fail to properly audit its compliance with

25  procedures and policies.  You claim that it's limited to

1    allegations of failure to promulgate safety policies and the

2    Plaintiffs indicate that it is relevant to deliberate

3    indifference, negligence, failing to provide timely medical

4    care, all these issues.

5         So do you have anything else that you'd like to add,

6    Mr. Lee?

7         **MR. LEE:**  Yeah, we have produced the investigative

8    reports that were done regarding the incident.  We've produced

9    the policies that had to do with monitoring inmates in the pod,

10   classification of inmates (inaudible) the two things that are

11   at issue here.  The claim is that Mr. Romero was improperly

12   classified and housed and that staff improperly monitored

13   inmate activity in the pod.  We have produced policies that

14   have to do with that and we've produced the investigative

15   reports done after the incident.

16        Core Civic's policy on how it conducts internal

17   audits, I just don't see how there's any relevance to that

18   here.

19        **THE COURT:**  Thank you.

20        I do find that it is relevant to these issues.

21   Inmate classification, deliberate indifference, negligence,

22   conduct subsequent, timely medical care, so I'm going to order

23   that you provide this policy by tomorrow as well, 5:00 p.m.

24        Okay.  Moving on, Policy 03-22, Internal

25   Investigations.  Mr. Lee, I'll hear from you if there's

1    anything you want to add.  You're indicating that the assault

2    didn't involve a Core Civic employee.  I think that the very

3    crux of this case involves Core Civic employees, but I will

4    hear from you.

5          **MR. LEE:**  Sure.  The purpose of that policy is to

6    investigate employee misconduct.  At the time that the incident

7    occurred there is no allegation that an employee had assaulted

8    an inmate, which is the usual situation involving assault where

9    this policy would come into play.  This is an inmate-on-inmate

10   assault.  And again, Core Civic did investigate and we have

11   produced those records to Plaintiff.  So the policy as to when

12   Core Civic investigates claims of an employee assaulting an

13   inmate, claims of employee theft, claims of other violations of

14   the employee code of ethics, I just don't see how that's

15   relevant to obtain whether in this particular incident this one

16   inmate was classified incorrectly and on this one day the pod

17   wasn't properly supervised.

18         **THE COURT:**  Okay.  Ms. Quijano?

19         **MS. QUIJANO:**  Your Honor, I think the argument for

20   this is similar to the audits, inspections, and corrective

21   actions issue.  For the internal investigations, obviously

22   Plaintiff is claiming that there was misconduct by the staff on

23   this day, that guards were not supervising, that guards were --

24   had misclassified inmates in the pod, that there was danger

25   caused by the guards' actions and inactions, and the policy

1  about internal investigations is completely relevant to

2  determine whether or not an investigation should have taken

3  place.  If there are other internal investigations that

4  require -- or policies that require some looking into why this

5  attack happened, why they weren't being supervised in direct

6  supervision pod, and so I think they would be totally relevant

7  and necessary to litigate this case adequately and prove

8  deliberate indifference by the staff.

9          **THE COURT:**  Okay.  Mr. Lee, any final response?

10          **MR. LEE:**  No, Your Honor.  Again, this policy would

11  be relevant to determine whether Core Civic properly

12  investigated it after the fact.  This policy has no bearing on

13  actions of staff leading up to the incident itself.  There's

14  not a claim in this case that Core Civic failed to properly

15  investigate.  Again, we did, and Plaintiffs has those records.

16          **THE COURT:**  Okay.  And this is only -- Counsel, we're

17  really only talking about providing policies, correct?

18          **MR. LEE:**  Correct.

19          **THE COURT:**  All right.  I do find that it's relevant

20  and it's proportionate to the needs of this case or -- let's

21  see, where is my -- yeah, so I do find, yes, that it's relevant

22  to the Plaintiff's claim or defenses and proportional to the

23  needs of the case.  I mean, yes, this does involve Core Civic

24  employees for misclassification going into a pod, talking to

25  individuals, leaving and turning their back, not monitoring,

1    not responding to medical attention.  I think all these issues

2    go to both negligence and deliberate indifference, so I'm going

3    to order that you provide that policy.

4           All right.  The next policy is the policy regarding

5    count, counting inmates by name and location.  Are you still

6    objecting to that policy being provided to the Plaintiffs?

7           **MR. LEE:**  Yes, Your Honor.  Again, I recognize that

8    we are talking about policies, but discovery, although broad,

9    does have limits and I don't see that this policy is relevant.

10   We've produced the unit logs and the central control logs

11   showing when count occurred so --

12          **THE COURT:**  But what is your real objection to a

13   policy regarding count?  Any --

14          **MR. LEE:**  Well, for one, for all of these policies,

15   Your Honor, they're proprietary Core Civic policies that, you

16   know, aren't intended for widespread production.  As you know,

17   Core Civic is a private corporation that bids against other

18   correction and detention services providers for different

19   contracts and if these policies are just out in the public

20   available for anybody to see, that provides the opportunity for

21   other competitors of Core Civic to undermine its efforts to

22   obtain these contracts.

23          **THE COURT:**  Okay.  I mean what about the interests of

24   Mr. Romero in determining what happened here and why he was

25   injured and -- I mean you feel that the policy regarding

1  protecting the private institution is greater than the

2  interests in a case where somebody has filed a complaint

3  alleging, as we've said over and over again, deliberate

4  indifference and negligence?

5          **MR. LEE:**  That's not what I'm saying at all, Your

6  Honor.  But what I'm saying is that Mr. Romero hasn't alleged

7  that this happened because Core Civic didn't conduct a count

8  properly.  He's got the logs showing when count occurred so if

9  he wants to make an argument that it had been "X" number of

10 minutes since anybody was in the pod because the last count

11 occurred at whatever time it occurred, he's able to make that

12 argument with the documents being produced.

13         **THE COURT:**  Okay, it looks like, yeah, she wants

14 information about counting inmates by name, location, and

15 there's also the allegation that there was no supervision in

16 that area for at least 30 minutes.

17         So can you add anything, Ms. Quijano?

18         **MS. QUIJANO:**  Your Honor, as far as -- I guess I'll

19 address the easy issue about that Mr. Lee raised about policies

20 being out in the public sphere to be used against them in

21 bidding.  There's a protective order in place in this case.  I

22 don't think that that's a legitimate concern.  We're subject to

23 the protective order.  We won't be disseminating the policies

24 that are provided.  We've agreed to a protective order.

25         Also, there are allegations in this case about

1   failure to supervise inmates, for failure to adequately be in

2   the pod and it was a direct supervision pod.  The policy about

3   count, how it's conducted, when it's conducted, what records

4   need to be maintained about count are absolutely relevant to

5   proving Plaintiff's claims.  The fact that it happened at

6   various times and we have a record of what count existed

7   doesn't give us the full picture of what should have existed,

8   what should have happened, what they knew needed to happen to

9   ensure inmate safety and what failed to happen.  So the policy

10   about count is relevant to Plaintiff's claims and to proving

11   that Defendants were negligent or indifferent.

12          THE COURT:  All right.  Mr. Lee, anything else?

13          MR. LEE:  Yes, Your Honor, just that if the concern

14   is determining when the count was supposed to happen, then this

15   particular policy procedural guideline that's at issue doesn't

16   deal with count times, it describes the process for conducting

17   counts.

18          THE COURT:  Okay.  And do you agree that it would --

19   could be disclosed subject to the protective order?

20          MR. LEE:  Yes, I suppose it could be, Your Honor.  I

21   just -- my concern throughout all of this has been that

22   Plaintiff seems to -- Plaintiff takes too broad a view of

23   discovery in my view (indisc.).

24          THE COURT:  All right.  Well, I don't think it's too

25   broad, Counsel.  It may not be admissible in a trial and that

1    would be up to Judge Gonzales to decide.  But this is the

2    standard on discovery and I'm struggling to see why you're not

3    willing to provide this information, especially pursuant to a

4    protective order.  Okay, so I'm going to ask that you provide

5    that as well.

6         So then we go on to inmate names and that has already

7    been addressed.  Yesterday you indicated that there is no

8    record of other inmates.  Correct?  Is that right?

9         **MR. LEE:**  Correct.  There's no record to produce that

10   would show all of the inmates that were in there at that time.

11   And again, we have produced not only names, but classification

12   and institutional files for the other three inmates who were

13   involved in this incident with the Plaintiff.

14         **THE COURT:**  Okay.  All right, so I guess that's the

15   next thing.  I'm a little confused.  You're talking about

16   inmate classification files?  Those have been produced?

17         **MR. LEE:**  For the inmates involved in the incident,

18   Your Honor.  Yes.

19         **THE COURT:**  Okay, but not for the other inmates.  It

20   doesn't sound like you're going to have any ability to do that

21   now that you don't have the names of the other inmates.  Is

22   that right?

23         **MR. LEE:**  Yes.  So there's two concerns.  Number one,

24   we can't identify who else was in there so we don't know what

25   files should be produced.  But just as a general proposition, I

1   don't see the relevance or the utility in producing

2   classification files for other inmates who weren't involved in

3   the incident.

4        The claim is that Mr. Romero should not have been

5   housed in that pod because it was a dangerous one.  The inmates

6   who presented the danger to him, if there was danger to be

7   presented, were the inmates that were involved in this

8   incident.  Those classification files have been produced.  So I

9   don't see that production of other classification files outside

10  of those four inmates are relevant.

11        **THE COURT:**  Okay.  And it is also your position

12  though, isn't it, that you don't have them?

13        **MR. LEE:**  Well, I don't know if we have them because

14  we don't have the pod roster names, I don't know who they are.

15  So I can't say definitively whether we have the classification

16  files because I don't know which ones to look for.

17        **THE COURT:**  Okay.  And I'm looking at the Plaintiff's

18  Reply where the Plaintiff indicates that the Plaintiff was

19  misclassified by being placed in a housing unit with high

20  security threats, including his codefendant, that he was

21  obviously misclassified in general, the classification officers

22  arbitrarily placed inmates with all classification levels in

23  general population, and that this was systemic to the facility.

24        So Ms. Quijano?

25        **MS. QUIJANO:**  Yes, Your Honor.  I think the biggest

1  issue is what we just -- (indisc.) put in our Reply is that

2  there is a widespread issue alleging that the problem with Core

3  Civic's actions is misclassification of inmates that inmates

4  were being housed improperly, that the classification process

5  was inadequate, the officer who did the classification for

6  Mr. Romero did so poorly, that there is no generalized way to

7  classify inmates, and so information about the inmates who were

8  in the pod and their classification is relevant to prove this

9  claim, that they were all misclassified, there's this

10  widespread practice.  The classification files that we do have

11  indicate that one of the inmates classified into the high

12  security pod who was involved in the attack should not have

13  been placed in that pod.  He was a moderate level inmate placed

14  in a high security pod.  The deposition of the classification

15  officer occurred this week and there's no indication in the

16  classification form how he was housed there.  So we have four

17  classification records of inmates housed in the pod but one of

18  them is proved to have been mis-housed based on his

19  classification.

20        Plaintiff has more than enough reason to believe that

21  this happened to many inmates in the pod, that there's a

22  widespread practice of classifying inmates improperly which is

23  putting inmates in danger and proving this claim would prove

24  that the officers were not only negligent, but they were

25  indifferent.  And so the classification records of the inmates

1    that were in the pod that day are incredibly relevant.

2         The fact that the pod roster from that day has been

3    lost or destroyed obviously makes it difficult for them to

4    ascertain who was housed in the pod to gather the

5    classification records for those inmates and search their

6    files, but we're talking about a national private corrections

7    facility.  Core Civic has correction centers across the

8    country.  They have the ability to know who's housed in their

9    facilities on a particular date.  If the pod roster doesn't

10   exist, there has to be some other way for them to ascertain

11   which people were housed in their facility in which pod on a

12   particular day, especially on the day where someone was

13   attacked and beaten severely.

14        And so the claim that the pod roster is not -- no

15   longer exists in response to an interrogatory where they can

16   ascertain who was there through other methods, I think creates

17   a different problem of their ability to retain records and

18   provide witnesses and know who is in a pod and is demonstrative

19   of their problem in classifying and housing inmates if they

20   can't even figure out who was in the pod that day.

21        **THE COURT:**  Okay.  All right.  Mr. Lee, it sounds

22   like I'm going to find that this is in fact relevant and should

23   be provided.  I do understand that if it's tied to inmate names

24   and you don't have this information then you might not be able

25   to provide it, but I'm going to give you until March 17th to

1   try to obtain this information.  If it's not available, then I

2   need you to state to Ms. Quijano that it's not available and

3   that it's tied to the inmate names that are no longer

4   available.

5          Okay.  And then I guess the last issue is with regard

6   to personnel files.

7          Mr. Lee?

8          **MR. LEE:**  At the risk of repeating myself, Your

9   Honor, I don't see the relevance.  The claim here -- Plaintiff

10  keeps wanting to expand what's in the Amended Complaint, but

11  even with a throw-away allegation that this was a systemic

12  issue with the classification, the relief Plaintiff is seeking

13  is for his one particular classification.  This isn't a class

14  action.  This isn't an attempt to seek relief for anybody other

15  than Plaintiff.  And so the personnel files, you know, if they

16  were to show that these two employees had been disciplined for,

17  in the case of Ms. Padilla, the classification officer, the

18  case manager who did the misclassification.  If there was

19  evidence in her personnel file that she had been disciplined

20  for not properly classifying an inmate before, that really

21  doesn't -- it's not relevant to whether she classified

22  Mr. Romero properly in this case.  The (inaudible),

23          **THE COURT:**  What about deliberate indifference?

24          **MR. LEE:**  Right, but deliberate indifference means

25  that she had to be aware of a risk of harm Mr. Romero.  It's

1   not enough -- deliberate indifference doesn't mean everything

2   is fair game.  And in the case of Ms. Padilla in particular

3   there's not even a claim of deliberate indifference against

4   her.  The Amended Complaint doesn't reference her in the

5   deliberate indifference claim.  But again, even if they did,

6   there would have to be a showing that she had knowledge of a

7   risk of harm to Mr. Romero himself.

8        And in terms of Ms. Padilla, she testified at her

9   deposition that she doesn't -- had never -- during the time she

10  was at Cibola she never received any verbal or written

11  reprimand.  So there is not even a reason to believe that

12  producing her personnel file will provide relevant evidence.

13  But anything in that personnel file having to do with other

14  incidents has nothing to do with this incident.  Because even

15  if, for example, Ms. Padilla and Mr. Peterson had never been

16  trained at all, if they somehow managed to do things properly

17  in this case then they can't be said to have been deliberately

18  indifferent and they can't be said to have been negligent.  If

19  there were -- conversely, if they were properly trained and

20  messed up this time, I wouldn't be able to point to that

21  training and say, well, yeah, they messed up this time but we

22  still shouldn't be held liable because they were properly

23  trained.

24       Just things that happened in other instances have no

25  bearing on the relief sought here which is when this one

1    incident involving this one inmate who was assaulted by three

2    other specific inmates.  The personnel files aren't going to

3    provide any relevant evidence on that.  Ms. Padilla has already

4    testified that she has no verbal or written reprimands at

5    Cibola County, which would necessarily include from this

6    incident.  And upon information and belief Mr. Peterson is

7    going to testify to the same thing, or at a minimum that there

8    was nothing specific to this case.  So it just doesn't justify

9    the invasion into these employees' privacy when there's not a

10   claim for negligent hiring, training, supervision, et cetera.

11            **THE COURT:**  Has Mr. Peterson been deposed yet?

12            **MR. LEE:**  His deposition is coming up next week.

13            **THE COURT:**  Okay.  Then I'm not going to allow this.

14   Should circumstances change, I can revisit it, Ms. Quijano, but

15   at this time I'm not going to order that the personnel files be

16   disclosed.

17            **MS. QUIJANO:**  Okay.  Your Honor, if -- we'll reraise

18   it, but if I could make just one comment about the personnel

19   file of Ms. Padilla, who's already testified?

20            **THE COURT:**  You can.  I did read your Reply but go

21   ahead.

22            **MS. QUIJANO:**  Ms. Padilla's deposition took place a

23   couple of days ago and the fact that she's testified that she

24   has never been reprimanded of course does not generally -- or

25   necessarily mean that's true.  And the information about

1   reliability of Defendants and reliability at trial of her

2   testimony, if there is in fact information out there that she

3   has been reprimanded or warned, verbally warned, written

4   warning, if that exists in the personnel file the fact that

5   she's testified to something other than that would be relevant.

6   But --

7             **THE COURT:**  I understand.

8             **MS. QUIJANO:**  -- we'll reraise this if necessary in

9   the future, Your Honor.

10            **THE COURT:**  And I'm certain that you probably have

11  information about any other lawsuits that have been filed

12  and -- with regard to this issue.  You know, if you tell me

13  that one of these individuals was involved in another case, you

14  know, I think this would become a little bit more relevant.

15  Right now it's a little far afield.  So if the situation

16  changes, I will certainly reconsider it.

17            Counsel, I think that is all of your requests.  Are

18  there any additional?  And I will address attorney's fees.

19            **MS. QUIJANO:**  No, that's all, Your Honor.  Those are

20  all of our --

21            **THE COURT:**  All right.  And I'm going to just go

22  ahead and take your request for fees under advisement.  I need

23  to determine whether the Defendants were substantially

24  justified in a lot of their responses in this case, so I'm not

25  going to award fees at this time.

23

1          So anything further, Ms. Quijano?

2          **MS. QUIJANO:**  Nothing from Plaintiff, Your Honor.

3          **THE COURT:**  Mr. Lee?

4          **MR. LEE:**  No, Your Honor.

5          **THE COURT:**  All right.  Well, thank you all for your

6     time today and, Ms. Quijano, can you prepare an order for us

7     with our rulings and, if so, when can you provide that to us?

8          **MS. QUIJANO:**  Your Honor, I can prepare an order and

9     I can get that to you hopefully by tomorrow.

10          **THE COURT:**  Okay.  Let's just say by Monday.

11          **MS. QUIJANO:**  Monday?

12          **THE COURT:**  Okay.  Yes.

13          All right, thank you for your time today.  Have a

14     good day.

15          **MS. QUIJANO:**  You too, Your Honor.

16          **MR. LEE:**  Thank you, Your Honor.

17          **THE COURT:**  Thank you.  Bye-bye.

18       **(This proceeding was adjourned at 10:32 a.m.)**

19

20

21

22

23

24

25

## CERTIFICATION

   I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____     <u>May 7, 2022</u>

    Signed            Dated


       *TONI HUDSON, TRANSCRIBER*