IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

RUBEN ROMERO,

      Plaintiff,

v.                                                                                                     No. 1:21-cv-0544 KG/DLM

CORECIVIC, INC.;
CORECIVIC OF TENNESEE, LLC;
ANA PADILLA; and GARRICK PETERSON,

      Defendants.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** is before the Court on Plaintiff Ruben Romero's Motion for Sanctions. (Doc. 144.) United States District Judge Kenneth J. Gonzales referred this motion to me pursuant to 28 U.S.C. § 636(b)(1)(B) and (b)(3) "to conduct hearings, if warranted, . . . and to perform any legal analysis required to recommend to the Court an ultimate disposition . . . ." (Doc. 198.)

Discovery in this case has proceeded largely uninhibited, except for one instance that has spawned significant motions practice, culminating in the Motion for Sanctions now before the Court. In the Motion, Plaintiff asserts he is entitled to entry of default judgment against Defendants Peterson, CoreCivic of Tennessee, LLC, and CoreCivic, Inc.[1] because Defendant Peterson intentionally misrepresented his disciplinary history and Defendant CoreCivic withheld information demonstrating Peterson had done so. (*See* Doc. 144 at 7–11.) Based on a review of the record and the hearing conducted on September 8, 2023, the Court recommends denying the motion insofar as it requests default judgment. The Court, however, recommends lesser sanctions be awarded to Plaintiff. The recommended sanctions include requiring the Defendants to pay costs

---

[1] The Court will refer to CoreCivic of Tennessee, LLC and CoreCivic, Inc. collectively as "CoreCivic Defendants." The Court will refer to CoreCivic, Inc. as "CoreCivic." The Court will refer to Garrick Peterson as "Defendant Peterson" or "Peterson." The Court will refer to all three as "Defendants."

related to Peterson's March 15, 2022 deposition. It is recommended that discovery be reopened for six months to allow for a second deposition of Peterson if Counsel for Plaintiff chooses to do so and that costs related to the second deposition be paid by Defendants. The Court further recommends that during the six-month discovery period Plaintiff also be allowed to engage in limited discovery to include a Rule 30(b)(6) deposition of representative(s) of CoreCivic related to disciplinary records.  Finally, the Court recommends that Plaintiff be awarded his attorney's fees related to filing their motion for sanctions.

**I.      Factual Background and Procedural History**

Plaintiff filed his original complaint on June 11, 2021, bringing claims against CoreCivic, Inc., CoreCivic of Tennessee, LLC; Warden Brian Koehne and two unidentified detention officers. (Doc. 1.) On January 24, 2022, the Plaintiff moved to amend his complaint because through discovery the previously unidentified detention officers had been identified as Ana Padilla and Garrick Peterson. (Docs. 33 and 33-1.)  The Court granted Plaintiff's motion to amend on January 25, 2022, and Plaintiff filed his Amended Complaint the same day. (Docs. 34 and 35.) An answer to the amended complaint was filed on behalf of all the Defendants on February 8, 2022. (Doc. 38.)[2]

Plaintiff's suit stems from injuries he allegedly received on June 12, 2018, while he was an inmate at the Cibola County Correction Center (CCCC). (Doc. 35.) Plaintiff asserts he was attacked by three inmates on that date, one of whom was his co-defendant in a state criminal case. (*Id.*) As a result of his injuries, Plaintiff's three-count amended complaint against CoreCivic Defendants, Defendant Peterson, and Defendant Padilla, asserts negligence, respondeat superior against CoreCivic Defendants, and cruel and unusual punishment. (*Id.*)

---

[2] At the time the answer to the amended complaint was filed the law firms of Struck Love Bojanowski & Acedo, PLC and Kennedy Moulton & Wells, P.C. represented all the named Defendants.

Plaintiff filed his Motion for Sanctions on December 15, 2022. (Doc. 144.) The Motion asserts that Defendant Peterson intentionally misrepresented his disciplinary history during a deposition and CoreCivic Defendants concealed that misrepresentation. (*Id.* at 11.) The CoreCivic Defendants filed their Response on their behalf and Defendant Padilla's. (Doc. 152.) Rather than file his own response, pursuant to Local Rule 7.1(a), Defendant Peterson adopted in full the response CoreCivic Defendants filed. (Doc. 154.) Plaintiff filed his reply on January 26, 2023. (Doc. 159.)

II.    **Background Related to Discovery Disputes**

On October 8, 2021, Plaintiff sent his First Requests for Production on CoreCivic requesting complete copies of Defendants Padilla and Peterson's personnel files. (Docs. 16; 36-3 at 5–6.) On November 8, 2021, CoreCivic objected to the request on the grounds that it overbroad and not relevant. (Docs. 21; 36-3 at 5–6.) Plaintiff then filed his first motion to compel on February 3, 2022, claiming that the personnel files were relevant to the misconduct involved in the attack on Plaintiff. (Doc. 36 at 5.) On March 10, 2022, the Court held a hearing on the motion to compel during which counsel for Defendants argued that the personnel files were not relevant because the individual Defendants had not been disciplined as a result of the incident. (Docs. 50; 104-1 at 21:3–8.) Specifically, counsel stated:

> Ms. Padilla has already testified that she has no verbal or written reprimands at Cibola County, which would necessarily include from this incident. And upon information and belief Mr. Peterson is going to testify to the same thing, or at a minimum that there was nothing specific to this case.

(*Id.*) The Court denied the motion, and it was only after the denial that counsel for Defendants requested the individual Defendants' personnel files for the first time. (*See* Docs. 53; 104-1 at 21:13–16; 152-1 ¶ 4.)

Defendant Peterson was deposed on March 15, 2022. (Doc. 144-1.) In response to

3

being asked if he had ever fallen asleep on the job, had ever been disciplined for any other incidents, or had ever been disciplined for any reason, he stated "no." (Doc. 144-1 at 13:17–19, 14:12–18.) Peterson also testified that he had never received any verbal reprimands or warnings at any job. (*Id.* at 17:2–4.) Further, Peterson testified that he was terminated from CCCC in August 2018 for falling asleep on the job. (*Id.* at 11: 8–25, 12:1–2.) Subsequently, on March 23, 2022, counsel for the CoreCivic Defendants received Defendant Peterson's personnel file, which contained a termination letter dated June 26, 2018, less than two weeks after the attack. (Doc. 152-1 ¶¶ 6–7, 10.) No other disciplinary documents were in the file. (*Id.*)

On April 13, 2022, Defendant Peterson answered Plaintiff's First Set of Interrogatories referring to his deposition for interrogatories regarding his disciplinary history. (Doc. 144-2 at 1–4.) On April 19, 2022, Plaintiff sent CoreCivic Defendants a letter requesting Defendant Peterson's personnel file because his deposition testimony contradicted what counsel stated it would be. (Docs. 104-3; 144 at 5; 152 at 6.) Counsel for CoreCivic Defendants stated they did not know Peterson would testify he had been previously disciplined. CoreCivic nevertheless refused to produce the personnel file because they claimed the incident for which Peterson had been terminated was months after the attack on Plaintiff and therefore it remained true that he had never been disciplined prior to his termination. (Docs. 104-4 at 2–3; 152 at 6.) Subsequent to this disclosure, Defendant Peterson did not amend his original response to interrogatory No. 1 requesting information concerning his disciplinary history and referring Plaintiff to his deposition.

On April 26, 2022, counsel for Defendant Peterson moved to withdraw as counsel for him advising the Court that Peterson has retained Michael S. Jahner of the firm YLAW

4

P.C. to represent him. (Doc. 66 at 1.) Two days later Peterson's new counsel entered his appearance.

Plaintiff, on April 4, 2022, served his Fourth Requests for Production on CoreCivic and Defendant Padilla requesting all investigation, discipline, or termination records for all CCCC staff involving sleeping on the job, missing an assigned shift, being absent from an assigned post, or failing to perform duties while on shift. (Docs. 61; 152 at 6–7.) On May 4, 2022, Defendant CoreCivic objected to that request as overbroad, not proportional, and not relevant. (Docs. 73; 152 at 6–7.) Plaintiff filed a motion to compel the discovery of those disciplinary records on July 25, 2022. (Doc. 92.) Defendants CoreCivic and Padilla argued that disciplinary records were not relevant and that Plaintiff failed to present any evidence that the personnel file would reveal any prior instances of misconduct beyond the isolated instance of falling asleep on the job. (Docs. 99; 113 at 7.) The Court granted Plaintiff's motion on September 27, 2022, but limited it to a one-year period before and after the incident and only to the disciplinary records of the individuals involved in the incident. (Doc. 116 at 4.)

Pursuant to the Court's order, on September 29 and 30, 2022, counsel for CoreCivic requested that CCCC identify all the individuals assigned to Plaintiff's unit on the day he was attacked and their disciplinary records. (Docs. 152 at 8; 152-1 ¶¶ 11–13.) The disciplinary records Counsel for CoreCivic received included three Problem Solving Notices (PSN)[3] for Peterson—one from April 2018 and two from May 2018—which are formal notices of discipline that an employee must sign. (Doc. 144-3 at 1–3.) The PSNs revealed that on April 12, 2018, about one month after starting at CCCC, Defendant

---

[3] CoreCivic does not specify when they received the PSNs. (*See* Doc. 152 at 8 (citing Doc. 152-1 ¶ 14).)

Peterson received his first formal discipline for being unexcused to a scheduled shift. (Docs. 144-1 at 9:1–3; 144-3 at 3.) On May 28, 2018, Peterson received two formal write-ups for arriving two hours late to a scheduled shift and falling asleep on his shift. (Doc. 144-3 at 1–2.) Also received were two written discipline notices described Defendant Peterson as being "inattentive to his job duties" and "having a "pattern of being late for his assigned shifts." (*Id.*) Upon realizing that the May 2018 date in the PSN was inconsistent with Defendant Peterson's deposition testimony regarding when he fell asleep at work, counsel for CoreCivic Defendants requested that the facility conduct an ESI search to find any additional material regarding disciplinary records. (Doc. 152-1 ¶ 20.)

On August 18, 2022, Plaintiff filed a motion to reconsider the denial of the first motion to compel. (Doc. 104.) On October 24, 2022, counsel for the CoreCivic Defendants produced the PSNs to Plaintiff. (*Id.* ¶ 21; Docs. 133; 144-3 at 1–3.) On October 31, 2022, counsel for CoreCivic was notified that the ESI search located one responsive email concerning Defendant Peterson's sleeping on-the-job and subsequent termination. (Doc. 152-1 ¶ 22.) CCCC provided the email to counsel for CoreCivic Defendants, and on November 9, 2022, the CoreCivic Defendants provided that email to Plaintiff. (Docs. 152-1 ¶ 23; 134.) On December 1, 2022, the Court granted Plaintiff's motion to reconsider and ordered CoreCivic Defendants to produce Defendant Peterson's personnel file. (Doc. 139 at 7.) On December 9, 2022, CoreCivic Defendants produced the personnel file. (Doc. 143.) Plaintiff filed his Motion for Sanctions on December 15, 2022. (Doc. 144.)

The Court held a motion hearing on September 8, 2023. (Doc. 200.) At the motion hearing, the parties primarily restated the positions they took in their briefing, so the Court will not summarize the hearing here. The Court will, however, refer to discrete parts of the

hearing as necessary.[4]

### III. Relevant Law

#### A. Default Judgement Under Rule 37

Rule 37 governs the use of sanctions against parties for discovery abuses. The rule permits a court to enter a default judgment against a party who provides evasive or incomplete disclosures, answers, or responses, or fails to supplement an earlier response as required by Rule 26. Fed. R. Civ. P. 37(a)(4), (c). Because of the severity of a default judgment, "due process requires that 'failure' is a sufficient ground only when it is the result of 'willfulness, bad faith or [some] fault of [the party],' rather than inability to comply." *M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) (citing *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 640 (1976)) (subsequent citation omitted). Willful failure is defined as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown." *In re Standard Metals Corp.*, 817 F.2d 625, 628–29 (10th Cir. 1987) (quotation omitted).

In ascertaining whether a litigant's actions rise to the level of "willfulness" necessary to substantiate dispositive action, the Tenth Circuit applies a five-part test. *Ehrenhaus v. Reynolds*, 965 F.2d 916 (10th Cir. 1992). Although the *Ehrenhaus* test was born from a decision to dismiss a case, it is equally applicable to motions for default judgment. *See generally Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323 (10th Cir. 2011) (discussing the application of *Ehrenhaus* in cases of dismissal and default judgment). Under *Ehrenhaus*, a court should evaluate:

> (1) the degree of actual prejudice to the litigant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned

---

[4] The Court has reviewed the audio recording of the hearing on this motion to accurately paraphrase the arguments presented by counsel on September 8, 2023. Should the parties wish to obtain the recording, they may contact the Court's Records Department at 505-348-2020 or Records@nmd.uscourts.gov.

the party in advance that dismissal of the action would be a likely sanction for non-compliance; and (5) the efficacy of lesser sanctions.

*Id.* (quoting *Ehrenhaus*, 965 F.2d at 921). In applying the five factors, the Court should review each alleged event "separately and then as a whole . . . ." *Toma v. City of Weatherford*, 846 F.2d 58, 60 (10th Cir. 1988). However, "the factors 'do not represent a rigid test'" and are, instead, a "non-exclusive list of sometimes-helpful 'criteria' or guide posts . . . ." *Lee*, 638 F.3d at 1323 (quoting *Ehrenhaus*, 965 F.2d at 921)

In a motion seeking sanctions based on alleged untruthfulness, sanctions are appropriate under *Ehrenhaus* where a party has continually misrepresented issues despite the opportunity to remedy the falsities. In *Lee v. Max International, LLC*, the defendant filed a motion to compel, which the Court granted. 638 F.3d at 1319. The plaintiffs, however, failed to comply with the Court's order, leading the defendant to file a motion for sanctions seeking dismissal of the case. *Id.* The magistrate judge in the matter found that the plaintiffs had blatantly, and without excuse, disregarded the order but nevertheless did not grant the dismissal. *Id.* Instead, the magistrate judge gave plaintiffs another opportunity to produce the twice-compelled discovery but warned them that "continued non-compliance will result in the harshest of sanctions." *Id.* The plaintiffs subsequently filed a declaration that they had submitted all the requested documents, but the defendant still could not find everything it had requested. *Id.* at 1320. The defendant subsequently renewed the motion for sanctions, which the magistrate judge recommended be granted and the district judge adopted. *Id.* The Tenth Circuit affirmed the dismissal despite noting that not all the *Ehrenhaus* factors were explicitly analyzed. *Id.* at 1322–24.

More recently, in this District dismissal was granted in *LaJeunesse v. BNSF Railway Company*, where the plaintiff "repeatedly and willfully obscured, hid, and outright denied the truth

8

in response to interrogatories, requests for admissions, requests for production, and deposition questions." 333 F.R.D. 649, 674–75 (D.N.M. 2019) (Gonzales, J.). There, the court identified nine different issues in which the plaintiff not only obscured the truth or outright lied but did so repeatedly. *See id.* at 653–672. Throughout the discovery process, the plaintiff was either inconsistent or misrepresented evidence concerning medical records, prior complaints about the machine that caused his injury, video footage of himself, social media posts, prior criminal history, and purchase records. *See id.* The Court found that the plaintiff "knowingly and intentionally lied under oath, made material and false misrepresentations, and abused the discovery process" and granted dismissal because "[n]o sanction less severe than dismissal with prejudice exists to adequately address the egregious misconduct in [that] case." *Id.* at 675.

## IV. Analysis

The Court will analyze all five *Erenhaus* factors in its analysis. It will discuss the first three factors individually and the final two jointly. Finally, all the factors will be analyzed together. The analysis, and corresponding significance, of each factor will consider Defendant Peterson and CoreCivic Defendants' actions separately.

### A. Degree of Prejudice to Plaintiff.

The Court recommends finding that Plaintiff was prejudiced by Defendant Peterson's action. Stated plainly, Defendant Peterson is the reason the motion for sanctions is currently before the Court. At the September 8, 2023 motion hearing, counsel for CoreCivic, who represented Peterson at the time of his deposition, and when he answered Plaintiff's First Set of Interrogatories, stated that Peterson himself had informed him he would testify he had never been disciplined or that he had never been disciplined as it related to the day Plaintiff was attacked. Based on that assertion, the Court denied Plaintiff's motion to compel personnel files. (Doc. 53.) At the

9

deposition, however, Peterson stated he *had* been disciplined but that it had been months after the assault on Plaintiff. (Doc. 144-1 at 12:1–2.) He also stated he had never been disciplined previously. (*Id.* at 14: 12–18.)

Peterson's statements were untrue as shown by the letter of termination found in his personnel file dated less than two weeks after the assault and the PSNs for incidents occurring in the two months before. (Docs. 144-3 at 1–3; 152-1 ¶ 6–7, 10.) At the motion hearing, counsel for Plaintiff stated her client was prejudiced by Peterson's misrepresentations because he could not be deposed about the previous discipline to determine whether or how it affected the case. Moreover, those misrepresentations spawned two motions to compel, a motion to reconsider, and the motion for sanctions, all of which have cost Plaintiff time and money.

Counsel for CoreCivic and Peterson, in their response, do not address how Peterson's deposition testimony and response to interrogatories did not prejudice Plaintiff. At the hearing, however, they argued that prejudice did not occur because Peterson was somehow confused by the line of questioning related to his previous discipline and falling asleep, but these arguments ring hollow. When asked whether any record evidence existed that would support their assertion that Peterson misunderstood the line of questioning to regarding his discipline or previously falling asleep while working, counsel could point to none. What they do assert in their brief and arguments is that during the deposition Peterson did admit to being disciplined for falling asleep on the job and this led to his termination. Additionally, they assert that Plaintiff's counsel should have asked more pointed follow-up questions. At Peterson's deposition the following exchange occurred related to previous discipline and falling asleep on the job:

Q: So, I guess when did you stop working at CoreCivic?

A: It was six months after March, so in August or September-

10

Q: Okay.

A: --of that year, 2018.

Q: And why'd you leave?

A: Termination.

Q: Okay. Why were you terminated?

A. Falling asleep in one of the units.

Q. Had you ever fallen asleep on the job before that?

A. No.

Q Okay. Were you ever disciplined before you were terminated, aside from falling asleep that time?

A. Um –[5]

    Mr. Bojanowski: Objection.

    Go ahead.

Q. (By Ms. Quijano) Go ahead.

A. No.

Q. Okay. Any verbal reprimands, warnings at any job?

A. No.

(Doc. 144-1 at 3-4.) (Peterson Dep. 11:8-17; 13:17-19; 14:2-18.)

The Court is at a loss as to how this line of questioning is confusing or could somehow require follow up questions. And while the Court recognizes that Peterson was deposed almost four years after the events which are the subject of this lawsuit, it is unlikely that someone who

---

[5] The Court notes that Defendants argue Peterson displayed hesitance in answering whether he had ever been disciplined before being terminated, thus making it Plaintiff counsel's fault the issue was never developed. (Doc. 152 at 5.) As Plaintiff highlights in his Reply, however, Peterson was interrupted by an objection and when told to continue, responded "No" clearly and without hesitance. (Doc. 159 at 5 n.4 (quoting Doc. 144-1 14:12–18).)

11

had worked only four months for CoreCivic could not recollect that he had been disciplined and in an internal investigation admitted "he had fallen asleep a 'few' times at work." (Docs. 144-3 and 144-4.) Indeed, although documents showing the inaccuracies of Peterson's testimony have been turned over, Peterson has yet to amend his Responses to Plaintiff's First Set of Interrogatories.

Because Peterson chose to provide erroneous testimony to uncomplicated questions, the Plaintiff has been forced to engage in discovery and motion practice that would have otherwise been unnecessary. Thus, it is the Court's recommendation a finding that Romero was substantially and materially prejudiced by Peterson's misrepresentations.

The Court also recommends finding that Plaintiff was prejudiced by CoreCivic Defendants' actions. Plaintiff requested Defendant Peterson's personnel file on October 8, 2021. (Doc. 36-3.) Counsel for Defendants objected to producing the personnel file because, upon information and belief, Defendant Peterson would testify he had no verbal or written reprimands specific to the attack on Plaintiff. (Docs. 152 at 3–4; 104-1 at 2.) Counsel for Defendants did not have Defendant Peterson's personnel file when they made that statement, however, and relied only on Peterson's unverified assertion to make their objection. Accordingly, Plaintiff filed a motion to compel production of the personnel file February 3, 2022, which the Court denied. (Doc. 36, 53.) On December 1, 2022, however, the Court granted Plaintiff's motion to reconsider that denial, and Defendant finally produced the file on December 9, 2022—over one year after Plaintiff's initial request. (Doc. 139.)

On May 4, 2022, Plaintiff requested all disciplinary records for all CCCC staff. (Doc. 61.) Defendants objected to that request on the grounds it was overbroad and not relevant to the claims against Defendant Peterson. (Doc. 92-1 at 2–3.) On July 25, 2022, Plaintiff filed his second motion to compel in which he sought production of those records. (Doc. 92.) The Court granted the second

motion to compel on September 27, 2022, but only as to the individuals who were on duty on when Plaintiff was attacked. (Doc. 116 at 5.) Only after the Court's order did counsel for Defendants request all disciplinary records from CoreCivic, which led to the discovery of disciplinary records and an email about the numerous times Defendant Peterson had been disciplined. Defendants claim that counsel for CoreCivic Defendants reasonably assumed Defendant Peterson's personnel file would contain all disciplinary records but do not explain the reasoning for that claim. (Docs. 152 at 14 n.9; 152-1 at ¶ 13.)

Defendants' objection to producing Defendant Peterson's personnel file, and the basis the first motion to compel was denied, was the mistaken position Defendant Peterson had never been disciplined. Counsel took that position seemingly after only having spoken with Defendant Peterson but certainly without verifying it because they did not have his personnel file before he was deposed. The objection to producing Defendant Peterson's disciplinary records was based on a similarly flawed, and wholly unexplained, position that the personnel file contained all discipline-related documents. In both instances, Plaintiff ultimately obtained the information he requested, but only after lengthy motions practice that could have been avoided or significantly shortened had Defendants obtained and reviewed the documents prior to making their objections. In other words, Plaintiff was indeed prejudiced by Defendants' actions. Accordingly, the Court recommends a finding that Romero was substantially and materially prejudiced by the actions of CorCivic.

### B. Amount of Interference with Judicial Process.

Peterson interfered with the judicial process by misleading his counsel about what he would testify to and by providing misleading testimony at the deposition itself. At the motion hearing, Counsel for Peterson and CoreCivic argued he had been confused about the questions he was asked. The Court is unconvinced by those arguments. However, even if Peterson had been

confused, it would have been incumbent on him to ask for clarification, and his failure to do so resulted in much confusion and litigation that ought to have been avoided.

Defendants objected to both of Plaintiff's motions to compel on bases that were incorrect because they chose not to take the steps to confirm Peterson's disciplinary history knowing he was terminated from CCCC, thus requiring the Court to decide two motions to compel and one motion for reconsideration. To be sure, the Court granted Plaintiff's motion for reconsideration explicitly because the denial of the first motion to compel was based on a mistaken representation by Defendants. (Doc. 139 at 6.) The second motion to compel was necessary only because Defendants counsel had failed to determine whether any additional disciplinary records existed until after the Court ordered their production. (*Id.*) Accordingly, Defendants' actions concretely interfered with the judicial process.

### C. Culpability of Litigant.

The Court recommends finding Peterson culpable. The Court agrees with Plaintiff that Defendant Peterson intentionally misrepresented his disciplinary history to his counsel before his deposition and misrepresented it again during his deposition. Counsel for Peterson and CoreCivic claimed, in their briefing and at the motion hearing, that there is no evidence that Defendant Peterson intentionally misrepresented his disciplinary history, and an equally likely explanation is that Defendant Peterson simply misremembered the dates of when he was disciplined and terminated. (Doc. 152 at 9.) The Court is unconvinced by that argument, because it is unlikely that Peterson would not remember when his four-month employment at CCCC ended, especially because the attack on Plaintiff serves as a memorable landmark mere weeks before he was terminated. Counsel for CoreCivic also argued that Peterson may have testified inaccurately because he misunderstood the terms "trouble" or "discipline." At the motion hearing, again the

argument is unconvincing because the plain meaning of the word is clear, and there is no record evidence indicating Peterson misunderstood those terms. Additionally, when questioned at the hearing the counsel who represented Peterson at his deposition and when he answered the First Set of Interrogatories stated that he and Peterson prepared for the deposition. Accordingly, the only conclusion that the Court can arrive at concerning Peterson's culpability is that his misrepresentations during the discovery process were made knowingly and intentionally to mislead the Plaintiff. The Court therefore recommends a finding that Defendant Peterson is culpable for having intentionally misled the Court.

The Court also recommends finding CoreCivic Defendants and their counsel culpable. Defendants' counsel may not have *physically* had Defendant Peterson's personnel file or disciplinary records, but those documents *were* in their control because CoreCivic produced them shortly after each inquiry. *See XTO Energy, Inc. v. ATD, LLC*, No. CIV 14-1021 JB/SCY, 2016 WL 1730171, at *24 (D.N.M. Apr. 1, 2016) ("Simply put, if a person, corporation, or a person's attorney or agent can pick up a telephone and secure the document, that individual or entity controls it.") Thus, they had the ability to verify Peterson's claim that he had never been disciplined. Additionally, it is concerning that counsel for Defendants stated Peterson was terminated months after the attack on Plaintiff when they were in possession of the termination letter by then, which showed Peterson was terminated mere weeks after the attack. (Docs. 104-4 at 2–3; 152-1 ¶ 6–7, 10.) It is unclear the degree to which CoreCivic Defendants were aware of, and involved in their counsel's decisions, but they nevertheless bear responsibility for them. *See Landry v. Swire Oilfield Servs.*, 323 F.R.D. 360, 382 (D.N.M. 2018) (noting that courts have found that . . . clients control case files in their attorneys' hands") (citation omitted). Thus, the Court recommends a finding that the CoreCivic Defendants are culpable because they demonstrated, at

15

the very least, a "lackadaisical . . . approach to discovery . . . ." *Villa v. Doña Ana County*, No. CV 09-0976 BB/WPL, 2011 WL 13291099 (D.N.M. Aug. 25, 2011) (citation omitted).

### D. Advanced Warning and Efficacy of Lesser Sanctions.

The Court recommends finding that default judgment is not warranted. The primary reasons are the fact that Defendants did not receive warning that default judgment was a potential sanction and the efficacy of a lesser sanction.

To be sure, Peterson did not receive a warning, but in his case, it was not necessary for him to have been given one. *See Webb v. Texas*, 409 U.S. 95, 97 n. * (1972) ("Once a witness swears to give truthful answers, there is no requirement to warn him not to commit perjury or, conversely to direct him to tell the truth. It would render the sanctity of the oath quite meaningless to require admonition to adhere to it.") (citation and quotation marks omitted). Nonetheless, his single instance of misrepresentation at the deposition falls short of exhibiting a pattern of intentional misrepresentation or obstruction of the discovery process.

CoreCivic Defendants also did not receive a warning, and their relative misconduct is not so significant that dismissal is appropriate. Although their counsel's reactive practice of law may be disorganized, inefficient, and costly both to their client and the Court's resources, CoreCivic Defendants did not willfully conceal any information, so a lack of warning cuts against default judgment. *Lee*, 638 F.3d at 1323.

The Court will, however, take the opportunity to explicitly warn all Defendants now. Defendant Peterson is reminded to respond to any discovery request truthfully, and his failure to do so will almost certainly establish a pattern of habitual disregard for the discovery process justifying entry of default judgment against him. CoreCivic Defendants are similarly reminded that they cannot make claims about information contained in documents they control when the documents themselves plainly show those claims to be untrue and doing so again may result in

entry of default judgment against them.

### E. Factors Considered Together.

In total, the *Erenhaus* factors weigh against Defendant Peterson and the CoreCivic Defendants but do not weigh so heavily that a default judgment should be taken against them. These factors do, however, support lesser sanctions against these Defendants.

### V. Conclusion.

For the foregoing reasons, the Court recommends that Plaintiff's Motion for Sanctions for Discovery Misconduct be denied so far as it requests default judgment as lesser sanctions are available. Those lesser sanctions include allowing discovery to be reopened for a limited period so that a second deposition of Peterson can be conducted and also to allow for a deposition(s) of CoreCivic corporate representatives to be taken, requiring Peterson and the CoreCivic Defendants to pay the costs related to Peterson's first deposition and any subsequent deposition and an award of fees related to Plaintiff filing his Motion for Sanctions for Discovery Misconduct.

**THEREFORE, IT IS RECOMMENDED** pursuant to Rule 37 of the Federal Rules of Civil Procedure, Plaintiff's Motion for Discovery Sanctions (Doc. 144) be **granted, in part** as follows:

1. Discovery shall be reopened for six months from the date of any order adopting these Proposed Findings and Recommended Disposition for the purpose of allowing Plaintiff to take a second deposition of Peterson and conducting Rule 30(b)(6) deposition of CoreCivic corporate representative(s) and written discovery related to disciplinary records.

2. Should Plaintiff's Counsel choose to take a second deposition of Peterson the costs related to the taking of that second deposition shall be paid by the CoreCivic

Defendants and Peterson.

3. The CoreCivic Defendants and Peterson shall pay the costs related to taking Peterson's March 15, 2022 deposition.

4. Lastly, the Court recommends awarding Plaintiff his reasonable attorney's fees related to the filing of his Motion for Sanctions for Discovery Misconduct. (Doc. 144.)

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE