IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RUBEN ROMERO,

    Plaintiff,

v.                                            Case No. 21-CV-544-KG-KRS

CORE CIVIC, INC., CORE CIVIC OF
TENNESSEE, LLC, WARDEN
BRIAN KOEHN, ANA PADILLA,
and GARRICK PETERSON,

    Defendants.

MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff Ruben Romero's Motion to Exclude Testimony of Defendants' expert witness, Charles Keeton. (Doc. 171). That Motion is fully and timely briefed. (Docs. 185, 194). The Court, having considered the briefing and the applicable law, denies the Motion.

I.    *Background*

Mr. Keeton is Defendants' expert witness and is expected to testify about

> CCCC's facility operations, applicable CoreCivic policies and procedures, applicable ACA standards, and applicable New Mexico Corrections Department ("NMCD") standards for Cibola County inmates, in addition to CoreCivic's/CCCC's compliance with these policies and standards, including with respect to the subject incident. Mr. Keeton will testify that CoreCivic's policies and procedures at CCCC comply with all ACA standards and that CCCC has been accredited with the ACA since 2001.

Defendants Expert Disclosure (Doc. 171-2) at 3. Mr. Keeton is also a Managing Director-Operations at CoreCivic, where he has worked for 19 years. *Id.* at 2.

Mr. Romero moves for his exclusion on two bases. First, he argues that Mr. Keeton's proffered opinion is based on unreliable information or data because his opinion is a mere parroting of his lawyer's opinion and is not based on an independent review of the record. (Doc. 171) at 3–7. Second, Mr. Romero argues that Mr. Keeton's testimony is confusing and unhelpful because he misstates the ACA standards. *Id.* at 7–8.

II.     *Legal Standard*

A witness may be qualified as an expert based on their "knowledge, skill experience, training or education" to testify in the form of an opinion if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. This rule "imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony ... is not only relevant, but reliable.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (citing D*aubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)). This gatekeeping obligation extends to all expert testimony. *Id.* Even non-scientific and experience-based testimony must be relevant and reliable. *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001).

III.    *Analysis*

A.      *The Court is Not Persuaded That Mr. Keeton is Unreliable*

Mr. Romero first argues that Mr. Keeton is unreliable because his opinions were apparently fed to him by Defendants' attorney, which is evidenced by certain incongruities between the expert disclosure and Mr. Keeton's deposition testimony. (Doc. 171) at 3–6. The Court is not persuaded. The initial disclosure was just that—a disclosure filed by the attorney—

2

and not an expert report authored by Mr. Keeton. *See* Defendants' Expert Disclosure (Doc. 171-2). Under oath at a deposition, he stood by his opinions as his own. *See* (Doc. 185-2) at 3–4; *see also generally* (Doc. 171-1). They are, practically, his opinions. To the extent Mr. Romero argues that Mr. Keeton's opinions are unreliable because they rely on hearsay and/or on his attorney's statements, (Doc. 171) at 5–6, the Court notes expert opinion may be based on inadmissible evidence and on attorney statements, Fed. R. Evid. 703.

Of greater note to the Court is that Mr. Keeton is employed by Defendant CoreCivic. Mr. Romero argues this conflict undermines Mr. Keaton's reliability, which seems logical, but he does not cite to any authority for the proposition. While there is admittedly scant law on point, the Court is persuaded that expert testimony may be admissible even where the expert is related to a party or is an employee of party. For example, the Tenth Circuit has declined to take a hard line prohibiting such testimony:

> The only pertinent circuit decisions we have found uphold the admission of expert testimony related by a party, *see Tagatz v. Marquette Univ.*, 861 F.2d 1040, 1042 (7th Cir.1988) (noting that nothing in Fed.R.Evid. 702 suggests that a party cannot qualify as an expert), or, similarly, the employee of a party, *see Dunn v. Sears, Roebuck & Co.*, 639 F.2d 1171, 1174 (5th Cir.) ("That a witness is an employee of a party does not preclude his qualification as an expert."), *corrected on other grounds*, 645 F.2d 511 (1981); *e.g., Brownlee v. Gay & Taylor, Inc.*, 861 F.2d 1222, 1224–25 (10th Cir.1988).

*Scheidt v. Klein*, 956 F.2d 963, 968 n.4 (10th Cir. 1992). And this Court is particularly persuaded by a fellow district court opinion considering this exact issue, *Douglas v. Univ. Hosp.*, 150 F.R.D. 165, 168 (E.D. Mo. 1993), *aff'd sub nom. Douglas v. St. Louis Univ.*, 34 F.3d 1070 (8th Cir. 1994). In that case, a physician bringing a medical malpractice action in connection with the death of his mother was allowed to testify as an expert, despite the claim that a lack of impartiality should bar him from stating an expert opinion. *Id.* The Court reasoned that defendants would have an adequate opportunity to bring the physician's obvious bias to the jury's

3

attention, they had not otherwise challenged his qualifications, and his testimony did not show that he lacked a basis for forming his opinions immediately after learning of his mother's death. *Id.*

The same reasoning could be applied here. Mr. Romero has not challenged Mr. Keeton's qualifications, the Court finds no reason to doubt the basis of Mr. Keeton's opinions, and Mr. Romero can no doubt address the obvious bias on cross-examination. For all these reasons, the Court declines to find Mr. Keeton unreliable. Any concerns about the basis of his opinions can be addressed on cross-examination.

B. *Mr. Keeton's Testimony Is Helpful*

The Court concludes that testimony regarding ACA standards and CoreCivic policies will be relevant and helpful to the jury in determining the proper standard of care and finding facts related to any breach of duty—at least in the abstract. Opinions which obviously conflict with the ACA standards would be unhelpful and likely inadmissible, but the Court does not feel prepared to make that determination here and now. The standards of care are not an empirical fact. To the extent Mr. Romero disagrees with any of Mr. Keeton's interpretations of the ACA standards and the applicable standards of care, he is welcome to enter ACA standards and CoreCivic policies as evidence, offer his own expert's interpretation, and conduct cross-examination. The jury can hear the expert views and make determinations of weight and reliability for itself. And to the extent any testimony appears to conflict with ACA standards in an obvious way, Mr. Romero may object, and the Court and the parties can address the standard of care in jury instructions as appropriate.

IV.   *Conclusion*

The Court declines to exclude Mr. Keeton's testimony based on unreliability or confusion. The concerns Mr. Romero has raised can be dealt with appropriately via the adversarial process. Mr. Romero's Motion to Exclude Mr. Keeton's Testimony (Doc. 171) is, therefore, denied.

IT IS SO ORDERED.

_____
UNITED STATES DISTRICT JUDGE